UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MARY BETH CADLE,** *et al.*,

    **Plaintiffs,**

v.

**MICHAEL SHELTON,** *et al.*,

    **Defendants.**

Case No. 2:11-CV-00787
**JUDGE EDMUND A. SARGUS, JR.**
Magistrate Judge Norah M. King

## OPINION AND ORDER

Plaintiffs Mary Beth Cadle; Nationwide Life Insurance Company; and Benefits Administrative Committee, Plan Administrator of the Nationwide-Sponsored Health and Welfare Employee Benefit Plans, bring this interpleader action seeking a judicial determination as to which parties are entitled to life insurance and accidental death benefits under the Nationwide Death Benefit Plan (also referred to as "the Plan"). As both parties acknowledge, the Plan is an "employee benefit plan" governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). This matter is before the Court for consideration of Defendant Michael Shelton's Motion for Summary Judgment. (ECF No. 11.) Defendant Shelton specifically maintains that there are no genuine issues of fact and that he is entitled to a one-third share of the proceeds in question. For the reasons that follow, the Motion is **DENIED**. Additionally, the Motion of Defendant, Estate of William L. Moseley III, to Strike Improper Exhibits is **DENIED** as moot. (ECF No. 16.)

## I. BACKGROUND

### A. Factual and Procedural History

William L. Moseley III ("William Moseley") was an associate at Nationwide Mutual Insurance Company ("Nationwide"). Nationwide sponsors the Nationwide Death Benefit Plan. Under the Plan, an associate is able to purchase life and accidental death insurance benefits on the life of a spouse. (Compl. ¶ 20, ECF No. 1.) Shawna Re'Nee Moseley ("Shawna Moseley") was covered for life and accidental death insurance benefits under the Plan as the spouse of William Moseley. (*Id.* at ¶ 4.)

Regrettably, this matter comes before the Court as a result of a tragedy. According to Plaintiffs' Complaint, "[o]n February 17, 2010 William L. Moseley III shot and killed Shawna Moseley before . . . committing suicide." (*Id.* at ¶ 21.) Defendant Shelton submits evidence, including a preliminary investigation report from the Columbus Police Department and certificates of death for both individuals, supporting this interpretation of the unfortunate events.[1] (*See* Shelton Resp. Mot. Strike Exs. 1–2, ECF No. 18-1.) This tragedy has triggered a dispute as to which parties are entitled to life insurance benefits in the amount of $100,000 and accidental death insurance benefits payable in the amount of $185,000 upon the death of Shawna Moseley.

A number of Defendants have competing claims on the payments in question. Defendant

---

[1] Based on the current record, it is unclear to what extent the remaining Defendants, outside of Defendant Shelton, dispute the above characterization of Shawna Moseley's death. In answering Plaintiffs' Complaint, the remaining Defendants admitted to Plaintiffs' allegations. (Answer ¶ 21, ECF No. 4.) The remaining Defendants, however, also move to strike the evidence Defendant Shelton provides concerning Shawna Moseley's death. For the reasons described below, even assuming that William Moseley killed Shawna Moseley, Defendant Shelton is not entitled to the relief he seeks. Accordingly, the remaining Defendants' Motion to Strike such evidence is **DENIED** as moot. (ECF No. 16.) If necessary, the Court will revisit—at a later time—whether any factual dispute surrounding Shawna Moseley's death remains.

2

Shelton is the son of Shawna Moseley. Defendants J.A.M. and W.L.M. are the minor children of both Shawna and William Moseley. Defendants Roberta K. and Dean P. Lohisor are the guardians of the Estates of Defendants J.A.M. and W.L.M. Finally, Defendant Michael A. Moseley is the administrator of the Estate of William Moseley. With respect to this action, Defendants other than Defendant Shelton (hereinafter the "remaining Defendants") have been acting in concert.

Plaintiffs filed this interpleader action seeking a determination of the proper beneficiaries. Plaintiffs maintain that the Benefits Administrative Committee, the Plan Administrator, initially determined under the terms of the Plan that the Estate of William Moseley is the proper beneficiary. (Compl. ¶ 23.) Nevertheless, given law potentially barring "slayers" from recovery under both Ohio statutory and federal common law, Plaintiffs were ultimately unable to determine the proper beneficiaries. (*Id.* at 23–24.) Plaintiffs concede that they are required to make payment of life insurance and accidental death insurance benefits, but request judicial review of this action pursuant to 29 U.S.C. § 1132(a)(3) to enforce the terms of the Plan.

As detailed above, Defendant Shelton moves for summary judgment. According to Defendant Shelton, applying state and/or federal law, either the Estate of Shawna Moseley or the children of Shawna Moseley (in equal share) are entitled to the proceeds from the Plan. Defendant Shelton maintains that under either scenario he is entitled to a third of the proceeds in question.

## B. The Nationwide Death Benefit Plan

As indicated above, the Plan includes both life insurance and accident coverage.[2] (*See* Plan Art. I.) The Plan incorporates the terms of Nationwide's Insurance Policy and Accident Policy.[3] (*Id.* at Art. II.) With regard to the payment of claims, the Plan provides "[p]ayment for claims will be made according to the rules stated in the Insurance Policy and Accident Policy . . . ." (*Id.* at Art. VIII, Sec. 8.4.)

### 1. Insurance Policy

The Insurance Policy allows active associates to insure the lives of dependents, including spouses. (Ins. Pol. 7.) The Insurance Policy specifically provides that "[i]n the event of the death of a Dependent, we will pay you the amount for which that Dependent's life was insured at the time of his or her death." (*Id.* at 18.) With regard to beneficiaries, the Insurance Policy states:

> Your beneficiary is the person or persons who will receive Your Life Insurance/Consolatory Pay Benefit if You die.
>
> You will be required to name a beneficiary when You enroll . . . .
>
> If You failed to provide an adequate beneficiary designation, we will pay any available life insurance/consolatory pay benefits in the following order: first to Your surviving Spouse; if no surviving Spouse, to Your children then living, equally . . . .

---

[2] Plaintiffs attached the Plan as Exhibit A to the Complaint. (*See* ECF No. 1-1.) For the purposes of this Opinion and Order, the Court will cite to this document as "Plan."

[3] In moving for summary judgment, Defendant Shelton relies on indirect evidence regarding the terms of the Insurance Policy and Accident Policy. For the purposes of expediency and accuracy, the Court directed Plaintiffs to produce the relevant Insurance and Accident Policies as well as evidence concerning the designation of beneficiaries under these policies. (*See* Hughes Decl., ECF No. 22-1.) The Insurance Policy is Exhibit A to the Declaration of Cynthia Hughes and the Accident Policy is Exhibit B. For the purpose of this Opinion and Order, these documents will be cited as "Ins. Pol." and "Acc. Pol." respectively. Citations to page numbers for these documents shall refer to the page number of the electronic filing.

(*Id.* at 36–37.) In its definition section, the Insurance Policy makes clear that "You or Your means the Active Associate in whose name a certificate of insurance is issued."[4] (*Id.* at 36.) Additionally, the Insurance Policy defines child as "Your child (the Active Associate's natural child, stepchild, adopted child or child placed with you for adoption) . . . ." (*Id.* at 35.)

### 2. Accident Policy

The Accident Policy allows an employee to "insure *Dependents* whom an *Insured* has enrolled for the Family Plan . . . ." (Acc. Pol. 7.) "Insured" for the purposes of the Accident Policy "means an eligible person who is within the covered class(es) listed in the Policyholder's Application . . . who has enrolled for coverage . . . ." (*Id.* at 10.) The Accident Policy defines "Covered Dependent" as "a *Dependent* whom the *Insured* has enrolled for the Family Plan under this Policy . . . ." (*Id.* at 9.)

With regards to the payment of claims, the Accident Policy specifically states "[a] *Covered Dependent's* beneficiary is the *Insured*. If no beneficiary is living on the date of a *Covered Dependent's* death, the beneficiary is the *Insured's* estate." (Acc. Pol. 20.) The Accident Policy also provides:

> Loss of Life benefits will be paid to the beneficiary as described in the Designation or Change of Beneficiary provision . . . . To receive proceeds, a beneficiary must be living on the earlier of the following dates: (a) the date the Company receives proof of the loss of life; or (b) the 10th day after the death.

(Acc. Pol. 25.) The Designation or Change of Beneficiary provision states:

> Each *Insured* may designate a beneficiary to whom loss of life benefits are

---

[4] The Insurance Policy provides the possibility, under certain circumstances, for a dependent spouse to convert the dependent life insurance policy into an individual policy issued directly to the dependent spouse. (*See* Ins. Pol. 18–19.) The evidence does not indicate that any such conversion took place in this case.

5

payable. The designation shall be as follows in descending order of preference:

1. beneficiaries designated in writing by the *Insured* for this Policy on file with the Policyholder, if any, otherwise;

2. beneficiaries as designated in writing for any group life insurance plan or its renewal in force for the Policyholder, if any, otherwise;

3. in equal shares to the members of the first surviving class of those that follow, if any:

    (a) an *Insured's* lawful spouse, if not legally separated or divorced;

    (b) an *insured's* natural child, adopted child, foster child, stepchild, or other child for whom the *Insured* has or had legal guardianship (proof will be required); or

    (c) an *Insured's* parents, whether natural, step or adoptive; otherwise

4. the estate of the *Insured*.

(Acc. Pol. 26.)

### 3. Summary Plan Description

Plaintiffs also provide the Summary Plan Description for the Nationwide Death Benefit Plan. (Compl. Ex. B, ECF No. 1-2.) Of particular note, section 10.2.5 of the Summary Plan Description details "How to Receive Death Benefits Under the Plan . . . ." (*Id.* at 5.) This section states:

> After your death, the beneficiary(ies) named by you will have to send a certified copy of the death certificate to the Associate Service Center. After Nationwide receives the death certificate and all other request information, Nationwide will possess the claim.
>
> If one of your covered Dependents dies, you will need to contact the Associate Service Center for claim forms and instructions. You are the beneficiary of your Defendants' death benefits and AD&D benefits.

(*Id.*) The Summary Plan Description emphasizes, however, that it is only a summary of the Plan

6

and does not govern administration of the Plan. (*Id.* at 1.)

### 4. Designation of Beneficiaries

Cynthia Hughes, the Secretary for the Plan Administrator, avers that there is no documentation demonstrating that either Shawna Moseley or William Moseley affirmatively selected a beneficiary(ies) specifically for the benefits payable upon the death of Shawna Moseley. (Hughes Decl. ¶ 3.) Ms. Hughes, however, provides documentation regarding the general beneficiary election that William Moseley made under the terms of the Plan. (*Id.* at ¶ 5.) This evidence reflects that William Moseley designated Shawna Moseley (for 100% of the proceeds) as his primary beneficiary. (Hughes Decl. Ex. C, ECF No. 22-4.) William Moseley also alternative beneficiaries of M.S., W.M., and J.M. for 10%, 45%, and 45% of the proceeds respectively. (*Id.*)

## II. STANDARD

The Court has "subject matter jurisdiction over an interpleader action initiated to determine the proper beneficiary of an employee pension benefit plan." *IBEW Pac. Coast Pension Fund v. Lee*, 462 F. App'x 546, 548 (6th Cir. 2012). Generally, the Court applies *de novo* review to the decisions of plan administrator's under ERISA. *Morrison v. Marsh & McLennan Companies, Inc.*, 439 F.3d 295, 300 (6th Cir. 2006). Nevertheless, "[w]here an ERISA plan gives the plan administrator such discretionary authority, we review under an 'arbitrary and capricious' standard."[5] *Id.* At least some federal courts have recognized that when an administrator chooses not to exercise its discretion judicial review is *de novo*. *Alliant*

---

[5] Here, the Plan contains a provision giving the Plan Administrator authority "[t]o exercise discretion and authority to construe and interpret the provisions of the Plan . . . ." (Plan Art. VIII, Sec. 8.6.)

7

*Techsystems, Inc. v. Marks*, 465 F.3d 864, 868 (8th Cir. 2006). Moreover, the United States Court of Appeals for the Sixth Circuit has held that the deferential arbitrary and capricious standard "does not apply to a plan administrator's determination of questions of law . . . ." *Daft v. Advest, Inc.*, 658 F.3d 583, 594 (6th Cir. 2011). Here, because the Plan Administrator refrained from reaching the central issue, the effect of the slayer doctrine on potential beneficiaries, the Court will apply *de novo* review.[6]

This matter is before the Court for consideration of Defendant Shelton's Motion for Summary Judgment. Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Liberty Lobby, Inc.*, 477 U.S. at 248; see also *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

---

[6] Neither party addresses the proper review standard for an interpleader action under 29 U.S.C. § 1132(a)(3). At least some federal authority suggests that the Court should still apply deferential review to a plan administrator's initial determination, even if the decision was incomplete. *See Trs. of Electricians' Salary Deferral Plan v. Wright*, 688 F.3d 922, 926 (8th Cir. 2012) (holding that the administrator's eligibility determination was due deference even though it did not resolve other issues). Here, for the reasons described below, the Court finds that denial of Defendant Shelton's Motion is appropriate regardless of the level of deference.

8

*Radio Corp.*, 475 U.S. 574, 586 (1986) (the requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby, Inc.*, 477 U.S. at 251–52.

### III. ANALYSIS

#### A. ERISA Preemption

As a preliminary matter, the Court must address the role preemption plays in this dispute. "ERISA by its terms preempts any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." *Assoc. Builders & Contractors v. Michigan Dept. of Labor & Econ. Growth*, 543 F.3d 275, 279 (6th Cir. 2008) (internal quotations omitted). The Supreme Court has held that "a state law relates to an ERISA plan if it has a connection with or reference to such a plan." *Egelhoff v. Egelhoff ex. rel. Breiner*, 532 U.S. 141, 147 (2001). The Supreme Court, however, left open the question of whether ERISA preempts state law "slayer" statutes:

> Finally, respondents argue that if ERISA pre-empts this statute, then it also must pre-empt the various state statutes providing that a murdering heir is not entitled to receive property as a result of the killing. *See, e.g.*, Cal. Prob.Code Ann. §§ 250-259 (West 1991 and Supp. 2000); 755 Ill. Comp. Stat., ch. 755, § 5/2-6 (1999). In the ERISA context, these "slayer" statutes could revoke the beneficiary status of someone who murdered a plan participant. Those statutes are not before us, so we do not decide the issue. We note, however, that the principle underlying the statutes-which have been adopted by nearly every State-is well established in the law and has a long historical pedigree predating ERISA. *See, e.g., Riggs v. Palmer*, 115 N.Y. 506, 22 N.E. 188 (1889). And because the statutes are more or less uniform nationwide, their interference with the aims of ERISA is at least debatable.

*Id.* at 152. Other courts to consider the issue have reached mixed results. *See, e.g., Ahmed v. Ahmed*, 158 Ohio App. 3d 527, 536 (Ohio Ct. App. 2004) (holding that ERISA preempted Ohio's

9

state slayer statute); *Admin. Comm. for the H.E.B. Inv. & Ret. Plan v. Harris*, 217 F. Supp. 2d 759, 761 (E.D. Tex. 2002) (collecting case law on the topic).

If ERISA preempts state law, because of the absence of any ERISA or Plan provision on point, the Court would apply federal common law to decide the proper recipient of benefits in a slayer scenario. *See Tinsley v. Gen Motors Corp.*, 227 F.3d 700, 704 (6th Cir. 2000) (applying federal common law in ERISA action involving contentions of undue influence); *Harris*, 217 F. Supp. 2d at 761 ("When no controlling plan or statutory provision exists, federal common law decides which of the competing claimants receives the insurance proceeds."). Moreover, when federal common law in an area is unclear, the Court "may draw guidance from analogous state law." *Tinsley*, 227 F.3d at 704 (internal quotations omitted); *see also Harris*, 217 F. Supp. 2d at 761 ("The traditional deference given to state law in the area of family law supports a decision to borrow from state law when determining the federal common law for [slayer doctrine] issues.").

Under the circumstances of this case, the Court finds it unnecessary to decide whether ERISA preempts Ohio's slayer statute. *See Nale v. Ford Motor Co. UAW Retirement Plan*, 703 F. Supp. 2d 714, 722 (E.D. Mich. 2010) ("[T]he Court finds, as numerous other federal courts have, that it need not resolve this issue because it is not determinative of the outcome in this case."). For the reasons described below, the Court finds that federal and state law in this area lead to the same result.

**B.    State and Federal "Slayer" Law**

Both federal and Ohio law recognize that a person should not financially benefit from the murder of another. The United States Supreme Court has specifically stated that federal common law "prohibits a life insurance beneficiary who murders an insured from recovering under the

10

policy." *Giles v. California*, 554 U.S. 353, 384 (2008) (citing *New York Mut. Life Ins. Co. v. Armstrong*, 117 U.S. 591, 600 (1886)). Similarly, Ohio's slayer statute provides:

> (A) . . . [N]o person who is convicted of, pleads guilty to, or is found not guilty by reason of insanity of a violation of or complicity in the violation of [aggravated murder, murder, or voluntary manslaughter] . . . shall in any way benefit by the death. All property of the decedent, and all money, insurance proceeds, or other property or benefits payable or distributable in respect of the decedent's death, shall pass or be paid or distributed as if the person who caused the death of the decedent had predeceased the decedent.

Ohio Rev. Code § 2105.19(A). Moreover, the Ohio Supreme Court has held that the slayer statute is not "the *exclusive* method to determine whether a person should be barred from recovering as a beneficiary under a policy of insurance on the life of a decedent alleged to have been killed by the beneficiary." *Shrader v. Equitable Life Assur. Soc. of U.S.*, 20 Ohio St. 3d 41, 44 (Ohio 1985). Accordingly, although Ohio's slayer statute generally requires a conviction, *Shrader* held "that the identity of a person who intentionally and feloniously caused the death of another can be established in a civil proceeding in order to prevent the wrongdoer from receiving the proceeds of the deceased's life insurance policy." *Id.* at 48.

Although authority is limited, case law holds that a slayer's estate may not receive benefits as the result of the slayer's actions.[7] *See, e.g., Cook v. Western & Southern Life Ins. Co.*, 30 Ohio N.P.(N.S.) 247, 1932 WL 1969, at *3 (Ohio Com. Pl. Dec. 8, 1932) (concluding that a slayer's estate could not recover under an insurance policy based on the slayer's right); *In re Estates of Covert*, 717 N.Y.S.2d 392, 394 (N.Y. App. Div. 2000) ("Because [the slayer] doctrine

---

[7] Neither parties' briefing focuses on this issue. For the purposes of Defendant Shelton's Motion for Summary Judgment, the Court will presume that William Moseley's Estate cannot receive the insurance proceeds. The Court leaves open the possibility of revisiting this issue if necessary.

11

is as applicable to the slayer's estate as it is to the slayer, the property of the victim may not pass to the slayer's estate."); *cf. also Athmer*, 178 F.3d at 475 ("We take it, although the case law is sparse, that if the contingent beneficiary is himself a wrongdoer and his wrongdoing contributed to the death of his benefactor, as where the contingent beneficiary is the accomplice of the primary beneficiary in the benefactor's murder, the same rule that disqualifies the primary beneficiary disqualifies the contingent beneficiary."). The Sixth Circuit, in a case involving Kentucky law, stated as follows:

> It has uniformly been held that a beneficiary under a contract of personal insurance who murders the insured cannot recover the policy benefits. Likewise, the estate of a primary beneficiary who murdered the insured and then committed suicide is not entitled to the policy proceeds. And this result has been reached even in the absence of a specific policy provision to this effect, on the basis of public policy . . . .

*First Kentucky Trust Co. v. United States*, 737 F.2d 557, 560 (6th Cir. 1984) (quoting 1B Appleman, *Insurance Law and Practice* § 481-482 (1981)).

Jurisdictions are mixed as to the extent innocent relatives of a slayer can benefit from the slayer's actions. *See, e.g., Asthmer*, 178 F.3d at 476–79 (discussing case law addressing indirect benefit to the murderer); *Zemski v. Kish*, No. L-91-430, 1992 WL 238638, at *3 (Ohio Ct. App. Sept. 25, 1992) ("In this case, the wrongdoer himself is dead and it is his beneficiary who is receiving the benefits. Upon consideration thereof, we find that [Ohio Rev. Code § 2105.19] is not applicable to prevent a benefit from passing to one who is not the wrongdoer but a beneficiary of the wrongdoer."). The Court is unaware of any jurisdiction, however, excluding a slayer's relatives who are also related to the victim. *See Prudential Ins. Co. of Am. v. Tolbert*, 320 F. Supp. 2d 1378, 1380 (S.D. Ga. 2004) ("[S]ome jurisdictions extend the slayer's rule to also disqualify the killer's family, other than those also related to the victim.").

12

Both Ohio and federal law indicate that once a slayer is excluded, the Court must look to the language of the insurance policy to determine the appropriate contingent beneficiary. As quoted above, Ohio's slayer statute provides a precise method for accomplishing this, stating that any insurance proceeds payable to the slayer shall be treated as if he predeceased the victim. Ohio Rev. Code § 2105.19(A). Ohio common law holds that the language of the policy in question controls in determining the appropriate beneficiary of proceeds. *Neff v. Massachusetts Mut. Life Ins. Co.*, 158 Ohio St. 45, 52–54 (Ohio 1952); *cf. also Caliman v. Am. Gen. Fire & Cas. Co.*, 94 Ohio App. 3d 572, 575–76 (Ohio Ct. App. 1994) (turning to the language of an insurance policy to determine whether the parents or estate of a victim could recover proceeds following application of Ohio Rev. Code § 2105.19(A)). Although federal case law on the issue is not well developed, the United States Court of Appeals for the Seventh Circuit has stated that "[t]he usual consequence when a primary beneficiary disclaims or is forced to disclaim an interest under an insurance policy, will, pension plan, or other such instrument is that the contingent beneficiary takes in the place of the primary one." *Athmer*, 178 F.3d at 476.

Consequently, applying either Ohio or federal law in this case, the Court must look to the terms of the Plan to determine the proper contingent beneficiary in the event that William Moseley and his estate are disqualified.[8] "When interpreting ERISA plan provisions, general principles of contract law apply; unambiguous terms are given their plain meaning in an ordinary and popular sense." *Lipker v. AK Steel Corp.*, 698 F.3d 923, 928 (6th Cir. 2012) (internal quotations omitted). "Where plan language is ambiguous, extrinsic evidence may be considered

---

[8] Technically, Ohio Rev. Code § 2105.19(A) does not apply in this case because William Moseley was not convicted for killing Shawna Moseley. Nevertheless, as the Ohio Supreme Court recognized in *Shrader*, Ohio's common law principles in this area are still applicable.

13

to discern the purpose of the plan as the average employee would have reasonably understood it."
*Id.*

## C. Application

Here, Defendant Shelton asserts that he is entitled to a third of the insurance benefits. Defendant Shelton specifically maintains that, applying either Ohio or federal slayer law in conjunction with the terms of the Plan, the Court should award benefits to either (1) the Estate of Shawna Moseley or (2) to the children of Shawna Moseley—J.A.M., W.L.M., and Shelton—in equal shares. Additionally, in addition to the slayer doctrine, Defendant Shelton briefly maintains that the three children are the proper beneficiaries applying Ohio's simultaneous death statute, Ohio Revised Code § 2015.33.

### 1. Shawna Moseley's Estate

First, Defendant Shelton contends that if the default beneficiary provision within the Plan is not applicable, the Estate of Shawna Moseley is entitled to the proceeds. Defendant Shelton, however, fails to identify language in the Plan providing for such a result. Upon review, the Court finds that the Estate of Shawna Moseley is not entitled to the insurance proceeds under the terms of the Plan. Specifically, even assuming that both William Moseley and his Estate are ineligible in light of the slayer doctrine, the language of the policies in question indicates that Estate of Shawna Moseley was never an intended beneficiary of proceeds resulting from Shawna Moseley's death.

Incorporating the language of the Insurance and Accident Policies, the Plan demonstrates that William Moseley—as opposed to Shawna Moseley—was both the holder and intended beneficiary of the Plan benefits in question. As detailed above, the Insurance Policy specifically

14

provides that "[i]n the event of the death of a Dependent, we will pay you the amount for which that Dependent's life was insured at the time of his or her death." (Ins. Pol. 18.) The "you" in this provision refers to the Nationwide associate, William Moseley. (*Id.* at 36.) Likewise, under the terms of the Accident Policy, William Moseley was the "insured" and Shawna Moseley was the "covered dependent." (*See* Acc. Pol. 9–10.) The Accident Policy states that it is the insured who is a beneficiary of the covered dependent. (*Id.* at 20.) Moreover, the Accident Policy provides that any benefits for a covered dependent pass to the estate of the insured. (*Id.*) The Summary Plan Description also emphasizes that the Nationwide associate is the beneficiary of both a dependent's life insurance and accidental death benefits. (Compl. Ex. B 5.) Finally, as described in further detail below, under both the Insurance and Accident Policies, the selection of beneficiaries was left to William Moseley, not Shawna Moseley. (*See* Ins. Pol. at 36–37; Acc. Pol. at 26.)

Accordingly, although providing benefits to the Estate of Shawna Moseley might be an equitable resolution in light of this tragedy, there is no justification for such a distribution under the Plan's language. In contending that the Estate of Shawna Moseley is entitled to benefits, Defendant Shelton relies heavily on the decision of the Ohio Court of Appeals for the Seventh District in *Ahmed v. Ahmed*, 158 Ohio App. 3d 527 (Ohio Ct. App. 2004). In *Ahmed*, the Seventh District faced a similar factual situation involving the insurance proceeds of a murder victim. 158 Ohio App. 3d at 530–31. Applying the plain language of the contract in question, the court awarded benefits to the victim's estate. *Id.* at 538. The facts of this case, however, are distinguishable from the circumstances in *Ahmed*. Obviously, this case involves a separate insurance policy with distinct terms. Furthermore, *Ahmed* involved an insurance policy that the

15

victim obtained through her employer. Here, on the other hand, the employee plan in question is not that of the victim. Rather, William Moseley enrolled for benefits—payable upon Shawna Moseley's death—through his own employer.

### 2. Designation of Beneficiaries

Defendant Shelton's second contention is that the Court should apply the default beneficiary provisions embedded within the Insurance and Accident Policies. According to Shelton, because Shawna Moseley did not select a beneficiary, and because there is no surviving spouse, the Court should award the insurance proceeds to Shawna Moseley's children in equal shares.

The Court must look to the Plan's terms to assess this contention. To begin with, assuming that both William Moseley and his Estate are disqualified, the Plans' terms are ambiguous as to who receives benefits upon the death of Shawna Moseley. As detailed above, both the Insurance and Accident Policy make clear that the Nationwide associate is the beneficiary of a dependent's coverage. (*See* Ins. Pol. 18; Acc. Pol. 20.) Moreover, the Accident Policy goes on to state that if the beneficiary is not living then the associate's estate receives benefits. (Acc. Pol. 20.) Neither policy specifically designates, however, where such benefits pass if neither the associate nor the estate is eligible.

In light of these circumstances, and given the record before the Court, the Plan is required to distribute such proceeds in line with the general procedures for designating beneficiaries. Once again, the Insurance Policy states in pertinent part:

> Your beneficiary is the person or persons who will receive Your Life Insurance/Consolatory Pay Benefit if You die.
>
> You will be required to name a beneficiary when You enroll . . . .

16

> If You failed to provide an adequate beneficiary designation, we will pay any available life insurance/consolatory pay benefits in the following order: first to Your surviving Spouse; if no surviving Spouse, to Your children then living, equally . . . .

(*Id.* at 36–37.) The Accident Policy, in turn, provides:

> Each *Insured* may designate a beneficiary to whom loss of life benefits are payable. The designation shall be as follows in descending order of preference:
>
> 1. beneficiaries designated in writing by the *Insured* for this Policy on file with the Policyholder, if any, otherwise;
>
> 2. beneficiaries as designated in writing for any group life insurance plan or its renewal in force for the Policyholder, if any, otherwise;
>
> 3. in equal shares to the members of the first surviving class of those that follow, if any:
>
>    (a) an *Insured's* lawful spouse, if not legally separated or divorced;
>
>    (b) an *insured's* natural child, adopted child, foster child, stepchild, or other child for whom the *Insured* has or had legal guardianship (proof will be required); or
>
>    (c) an *Insured's* parents, whether natural, step or adoptive; otherwise
>
> 4. the estate of the *Insured*.

(Acc. Pol. 26.)

Defendant Shelton assumes that because Shawna Moseley did not designate beneficiaries under the Plan, the default beneficiary provisions apply. Nevertheless, William Moseley—not Shawna Moseley—was the holder of the policies in question as to both dependent coverage and coverage on his own life. As the policy definitions outlined, the beneficiary designation provisions' references to "you," "your," and "insured" all refer to William Moseley. (*See* Ins. Pol. 36; Acc. Pol. 10.) Accordingly, the pertinent question is whether William Moseley designated beneficiaries. Notably, if the Court were to apply the default beneficiary provisions,

17

any distinction between William and Shawna Moseley would make little practical difference to Defendant Shelton. After all, both the Insurance Policy and Accident Policy include stepchildren within the definition of child for the purposes of recovery.

Before reaching the default beneficiary provisions, however, the Plan language requires the Court to consider William Moseley's designations. The evidence before the Court reflects that William Moseley designated Shawna Moseley as his primary beneficiary for 100% of any proceeds. (Hughes Decl. Ex. C, ECF No. 22-4.) He then designated, in the event that Shawna Moseley did not survive, alternative beneficiaries: M.S., W.M., and J.M. for 10%, 45%, and 45% of the proceeds respectively. (*Id.*) Because Shawna Moseley is not a survivor under the Plan's terms, the alternative beneficiaries would receive the proceeds under this designation.[9] Accordingly, assuming that neither William Moseley nor his estate are eligible, and that the Plan's general beneficiary designation provisions apply, the evidence reflects that the proceeds should be awarded pursuant to William Moseley's alternative beneficiary designations. Because this designation does not entitle Defendant Shelton to a third of the proceeds, summary judgment is inappropriate.

---

[9] Defendant Shelton does not address William Moseley's beneficiary elections. The Court has considered, however, whether William Moseley's selection of Shawna Moseley entitles her Estate to proceeds. Such an interpretation would be contradictory to the terms of the Plan, because for Shawna Moseley or her Estate to benefit the Court must find that she survived ten days after the death of the insured, which she did not. Neither the slayer doctrine nor Ohio's simultaneous death statute—described below—require such a legal fiction.

### 3. **Simultaneous Death Statute**

Finally, Defendant Shelton contends, in addition to application of the slayer rule, that Ohio's simultaneous death statute applies. This statute specifically states that "a person who is not established by clear and convincing evidence to have survived a specified event by one hundred twenty hours is deemed to have predeceased the event for purposes of a provision of a governing instrument that relates to the person surviving an event." Ohio Rev. Code § 2105.33. According to Defendant Shelton, under this provision, Shawna Moseley's children are the proper recipients of the insurance benefits.

The Court disagrees with Defendant Shelton's application of the simultaneous death statute. Assuming that Ohio's simultaneous death statute applies, William Moseley will be deemed to have predeceased Shawna Moseley for the purposes of any survivorship provision. Unlike the slayer doctrine, however, the simultaneous death statute does not bar the Estate of William Moseley from receiving benefits. Under the terms of the Accident Policy, quoted above, the Estate of William Moseley would then receive death benefits relating to Shawna Moseley. (*See* Acc. Pol. 20.) The language of the Insurance Policy implies a similar result. (*See* Ins. Pol. 18.) At best (for Defendant Shelton), proceeds from the Insurance Policy would be awarded to William Moseley's designated alternative beneficiaries following the reasoning outlined above. Accordingly, Defendant Shelton is not entitled to judgment on the basis of Ohio's simultaneous death statute.

### IV. CONCLUSION

For the foregoing reasons, Defendant Michael Shelton's Motion for Summary Judgment is **DENIED**. (ECF No. 11.) Additionally, the Motion of Defendant, Estate of William L.

Moseley III, to Strike Improper Exhibits is **DENIED** as moot in light of this Opinion and Order. (ECF No. 16.)

  **IT IS SO ORDERED.**

3-26-2013
DATE

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**